THE NORTHEASTERN RAILROAD COMPANY, plaintiff in error, *vs.* WILLIAM S. MORRIS, defendant in error.

1. The second section of the act of 25th of February, 1874, repealing all provisions in charters to railroad companies granting state aid, which provides that should any of said companies claim that they have a vested right to such aid, and apply to the governor for the same, any citizen of the state may interpose by bill to restrain such companies, and the question as to whether such vested right exists shall be for the courts to determine, is unconstitutional, in this, that it is in violation of the true intent and spirit of the fifth and thirty-first paragraphs of the first article of the constitution of 1868.
2. The said section is also unconstitutional because it contains matter different from what is expressed in the title of the act of which it constitutes a part.

Constitutional law.    Laws.    Railroads.    Before Judge RICE.    Hall County.    At Chambers, June 22, 1877.

Reported in the decision.

COBB, ERWIN & COBB; B. H. HILL; HOPKINS & GLENN, for plaintiff in error.

R. N. ELY, attorney general; BARROW BROS.; C. D. HILL, for defendant.

WARNER, Chief Justice.

This was a bill filed by the complainant against the defendant, with a prayer for an injunction to restrain the defendant from applying to the governor of this state for an indorsement of its bonds to the extent of fifteen thousand dollars per mile, as provided by the seventh section of the act of 1870.    Upon hearing the motion for the injunction prayed for, the chancellor granted it, and the defendant excepted.

By the constitution of 1868, the general assembly is prohibited from granting, or loaning the credit of the state to aid any company, without a provision that the whole prop-

erty of the company shall be bound for the security of the state prior to any other debt or lien, except to laborers; nor to any company in which there is not already an equal amount invested by private persons.

The seventh section of the act of 1870 provides for the indorsement of the bonds of the company by the governor of the state at the rate of fifteen thousand dollars per mile, whenever said company shall have completed and fully equipped twenty continuous miles of its road. The ninth section of the act provides "that before such indorsement shall be made, the governor shall be satisfied that so much of the road as the said indorsement shall be applied for is really finished and in complete running order, and that said road is free from all mortgages and other legal incumbrances that may endanger the security of the state, and upon the further condition and express understanding that any indorsement of said bonds as aforesaid, when made, shall not only subject all property of any kind in this state, which may be purchased with said bonds, to the obligations of the first mortgage lien until all the principal and interest due on said bonds, so indorsed, shall be paid, but the said indorsement shall be, and is hereby, understood to operate as a prior lien or mortgage on all the property of the company to be enforced as hereinafter provided for." There is no provision in the act of 1870 requiring that an equal amount to that of the indorsement applied for, shall have been already invested by private persons. The tenth section of the act provides for the enforcement of the mortgage lien in default of payment of said bonds, or the interest due thereon, by the company.

On the 25th of February, 1874, the general assembly passed an act repealing all provisions contained in charters theretofore granted to the different railroad companies in this state granting state aid, no matter what the terms of the same may be, or by which in any manner or form state aid is authorized to be granted to said companies; provided, that any company to which said state aid has been granted,

which, prior to the passage of this act, shall have acquired a vested right to the same, shall not be affected by this act. The second section of the act declares that, should any of said companies claim that they have a vested right to such aid and apply for the same to the governor, any citizen of the state may interpose by bill to restrain the company, and the question of whether such vested right exists, shall be for the courts to determine. On the 3d of March, 1874, the general assembly adopted a resolution by which it was resolved that the true intent and meaning of the above recited act (the act repealing all state aid to railroads) is, that the provisions of said act repealing state aid shall not apply to the Northeastern Railroad.

By the several acts of 1870, granting state aid to railroads, and especially by the act of 11th of December, 1871, the duty of making the indorsement of the state on the bonds of railroad companies, is devolved upon the governor of the state, in the manner, and under the restrictions, therein prescribed.

The prayer of the complainant's bill is, that the defendant be restrained from applying to the governor of the state for the indorsement of the bonds mentioned in his bill, or from applying to the governor for the indorsement of the state upon any of the bonds of the defendant's company, by virtue of any right arising from said act of October, 27th, 1870.

1. The complainant's bill is based on the second section of the act of 25th of February, 1874. Is that section a valid, constitutional law? Is it competent for the general assembly, under the constitution, to enact a law authorizing any court in the state to restrain any person from applying to either department of the government for a right to which that person claims to be entitled? The fifth paragraph of the first article of the constitution declares, that "the right of the people to appeal to the courts, to petition government on all matters, and peaceably to assemble for the consideration of any matter, shall never be impaired." To

authorize the courts to restrain a person, either natural or artificial, from petitioning, or applying to the executive department of the state government for a right to which such person may claim to be entitled at the hands of that department, would be in violation of the true intent and spirit of that clause of the constitution before cited. The executive and judicial departments of the government are separate and distinct. Why should the latter restrain any person from petitioning or applying to the former for a right which it is authorized to grant or refuse? The exact words of the constitution are, that "the legislative, executive, and judicial departments shall be distinct, and each department shall be confided to a separate body of magistracy. No person, or collection of persons, being of one department, shall exercise any power properly attached to either of the others, except in cases herein expressly provided for." The second section of the act of 1874 declares, "that should any of said companies claim that they have a vested right to such aid, and apply for the same to the governor, any citizen of the state may interpose by bill to restrain the company, and the question of whether said vested right exists, shall be for the courts to determine." Restrain the company from doing what? Restrain it from making an application to the governor for a right which it claims, as the complainant's bill seeks to do. If that section of the act does not mean that, it means that the company shall be restrained from deriving any benefit from such application to the governor, which, practically, amounts to the same thing; and the result would be, that the executive department of the government could not perform its appropriate functions and duties devolved upon it by law, without the consent and approval of the judicial department of the government. If the judicial department can restrain persons from making application to the executive department for any right which it is competent for the latter to grant or refuse, or restrain them from having the benefit of such an application when made, then the judicial department would, prac-

tically, control the action of the executive department, so far as the granting or refusing of any rights by that department, under the laws of the state, are concerned. If persons cannot apply to the executive department for their rights, which it is authorized to grant or refuse, or, having applied for them, are to be restrained by the judicial department from receiving the benefit of such application, the executive department would not be much troubled with hearing the applications of persons, for the simple reason, that they could not get to that department to be heard, or to have their claims considered, if they did apply.

2. But the second section of that act has another constitutional infirmity, which is fatal to it as a valid law. The constitution of the state declares, that no law or ordinance shall pass which refers to more than one subject matter, or contains matter different from what is expressed in the title thereof. The title of the act of 1874 is, " An act to repeal all provisions contained in the charters heretofore granted to different railroad companies in this state, granting state aid to such companies, where their right to the same has not vested." There is nothing in the title of the act which, in any manner, relates to the matter contained in the second section of the act hereinbefore cited. The second section of the act, therefore, contains matter *different* from what is expressed in the title thereof.

There being no valid law to authorize the complainant's proceeding, the chancellor erred in granting the injunction prayed for.

Let the judgment of the court below be reversed.